UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEJANDRO HERNANDEZ, | ) | CASE NO. 4:12cv2040 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| MICHAEL PUGH, et al., | ) | AND ORDER |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Alejandro Hernandez ("plaintiff") filed this *Bivens*[1] action against Northeast Ohio Correction Center ("NEOCC") Warden Michael Pugh, NEOCC Associate Warden Dennis Johnson, NEOCC Chaplain William Zeyer ("Chaplain Zeyer"), and NEOCC Captain Richard Frail ("Captain Frail") (collectively "defendants"). (Doc. No. 1.) In his complaint, plaintiff asserts that defendants interfered with the practice of his religion, and subjected him to cruel and unusual punishment. He does not specify the relief he seeks.

I. BACKGROUND

Plaintiff's complaint is difficult to read and interpret. He filed a "Notice Pro Se" along with his pleading that contains a limited number of additional facts. The Court will consider both of these documents.

On July 8, 2012, plaintiff indicates he participated in the Jewish "fast of Tamust

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

[*sic*],"[2] and on July 28 and 29, 2012, he participated in the "fast of 9th Ave [*sic*][.]"[3] (Doc. No. 1 at 4.) He states that when there is a Jewish fast, Chaplain Zeyer requires the Jewish community "to eat away three meal together is that racist discrimination violation of Human Rights 'Jewish Code.'" (Doc. No 2 at 2.) He contends he attempted to pick up a meal in the dining hall on July 29, 2012 when Captain Frail stopped him. He states, "the plaintiff trying pick up your meal makes fast Biblically—mandate Jewish faith because 'CCA' staff they force to the plaintiff takes your meal without authorized, reason plaintiff not have choose." (*Id*. at 2.) He cites to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000 cc-1, and the First Amendment. He also alleges this is a denial of due process.

The grievance and notice attached to plaintiff's complaint provide some insight into the probable factual basis for his claims. Although plaintiff indicated to Chaplain Zeyer that he was participating in the Jewish fast, he also reported to the dining room throughout the day to obtain meals. He then attempted to come back to the dining hall after sundown to obtain food with the other Jewish inmates. Upon observing plaintiff receiving food earlier in the day, Chaplain Zeyer informed plaintiff he would not be able to return after sundown because he had already broken the fast. It appears plaintiff nevertheless attempted to return to the dining hall after sundown and was stopped by Captain Frail. Plaintiff may be arguing that he should be permitted to obtain food throughout the day and bring it back to his cell to eat it when he decides to break the fast. It also appears he wants to be able to obtain food after sundown with the other

---

[2] "The Seventeenth of Tammuz is a minor Jewish fast day which commemorates the breach of the walls of Jerusalem before the destruction of the Second Temple." *Vigil v. Jones*, No. 09-cv-01676-PAB-KLM, 2010 WL 3703582, at *2 n.8 (D. Colo. Aug. 9, 2010), *report and recommendation adopted*, 2010 WL 3703675 (D. Colo. Sept. 13, 2010).

[3] The fast of Nineveh originated in Syriac Christian tradition and spread to other orthodox traditions and is a three-day fast commemorating the three days that the biblical prophet Jonah spent inside the belly of a fish. *See Three Day Fast of Nineveh*, SYRIAC ORTHODOX CHURCH OF ANTIOCH, http://syrianorthodoxchurch.org/news/2011/02/10/three-day-fast-of-nineveh/ (last visited Jan. 2, 2013).

Jewish inmates. The prison will not permit him to engage in both practices.

Plaintiff also asserts he was subjected to cruel and unusual punishment. He indicates he "had a problem for the comfort of sleep or slept disorder all unjustly in CCA." (Doc. No. 1 at 5.) He does not provide any other factual allegations pertaining to this claim.

## II. STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff.

### III. ANALYSIS

As an initial matter, plaintiff fails to state a claim for impeding the practice of his religion under either the RLUIPA or the First Amendment. RLUIPA regulates governmental activities. The statute defines "government" as "States and their agencies and departments, as well as persons acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A); *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009). RLUIPA was enacted in 2000 to resurrect the language of the Religious Freedom Restoration Act of 1993 ("RFRA"), Title 42 U.S.C. § 2000bb-1, after the Supreme Court determined, in *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997), that RFRA was unconstitutional, as applied to State and local governments. *See Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 987 (8th Cir. 2004). As enacted, "RLUIPA deals exclusively with state, rather than federal, prisons" and does regulate private entities accepting federal prisoners. *Benson v. Corrs. Corp. of Am.*, No. 4:08CV469, 2009 WL 2461016, at *2 (N.D. Ohio Aug. 7, 2009). *See Lovelace v. Lee*, 472 F.3d 174, 217 (4th Cir. 2006). Plaintiff is a federal prisoner, incarcerated at NEOCC, a private prison. He cannot state a cause of action against defendants under RLUIPA.

Plaintiff also fails to state a claim of interference with the free exercise of his religion. The First Amendment to the United States Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." Inmates retain the First Amendment right to exercise their religion subject to reasonable restrictions and limitations. *See Bell v. Wolfish*, 441 U.S. 520, 549-51 (1979). To state a claim based on the Free Exercise Clause of the First Amendment, the Court must first determine whether the belief or practice asserted is religious in the inmate's own scheme of things and is "sincerely held." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), citing *Kent v. Johnson*, 821 F.2d 1220,

1224 (6th Cir. 1987). Purely secular views or personal preferences will not support a Free Exercise Clause claim. *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 833 (1989). "[A] prisoner's right to practice his religion is not absolute," and prison officials may restrict the exercise of an inmate's religious expression "when necessary to facilitate some legitimate goals and policies of penal institutions." *Dreibelbis v. Marks*, 675 F.2d 579, 580 (3d Cir. 1982). In fact, the "mere assertion of a religious belief does not automatically trigger First Amendment protections. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protections." *See Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc).

If a person's belief is found to be both sincerely held and religious in nature, the Court must determine whether a substantial burden has been placed on that belief. The Sixth Circuit has stated that a "substantial burden" places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. Meridian*, Nos. 05-2309, 06-1210, 2007 WL 4322157, at *5 (6th Cir. Dec. 10, 2007); *see Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)(a substantial burden is one that renders religious exercise "effectively impracticable"). By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise[,]" *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 2007 WL 4322157 at *5. Moreover, isolated or sporadic government action or omission is *de minimis* and does not constitute a "substantial burden." *Greenberg v. Hill*, No. 2:07-CV-1076, 2009 WL 890521, at *5 (S.D. Ohio Mar. 31, 2009).

If a defendant's policy or practice is deemed to place a substantial burden on a

sincerely held religious belief, then the Court must determine whether it "is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). In *Turner*, the court set out four factors to test the validity of a challenged prison regulation. First, courts are to determine if there is a "valid rational connection" between the challenged regulation and the asserted governmental interest. Second, courts must examine whether there are "alternative means of exercising the right that remain open to . . . inmates" if the regulation is upheld. Third, the courts must question whether accommodation of the asserted right will have an undue impact on guards, other inmates, and prison resources generally. Finally, it must be determined if there is an alternative to the challenged regulation that fully accommodates the prisoner's rights at *de minimis* costs to valid penological interests. *Id.*

Here, there is no indication that defendants placed a substantial burden on plaintiff's religious practices. Rather, it appears that prison officials merely stopped plaintiff from eating meals during the day and then eating another meal after sundown served to Jewish inmates breaking the fast. The prison was willing to accommodate the fast and provide a meal when the fast concluded. Plaintiff chose to take meals at a time when he was supposed to be fasting. His actions, and not those of defendants, interfered with the practice of his religion and, therefore, defendants did not violate his First Amendment rights.

Finally, plaintiff indicates he was subjected to cruel and unusual punishment. In support of this claim, he indicates only that he "had problem for the comfort of sleep or slept disorder . . . ." (Doc. No. 1 at 5.) He provides no other allegations pertaining to this claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346). It is not concerned, however, with conditions that cause mere discomfort or inconvenience. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts, which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured by "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff fails to allege facts to suggest either the objective or subjective components have been satisfied. He provides no facts to suggest if his sleep discomfort or sleep disorder is a medical condition, or if his problem is caused by uncomfortable bedding or even if his housing situation renders it difficult for him to sleep. He does not indicate if he spoke with someone about this problem, and if he did, whether he spoke to one of the defendants. There is nothing in the complaint to suggest plaintiff was subjected to a substantial risk to his health or

safety, or that one or more of the defendants knew of and disregarded this substantial risk. Accordingly, plaintiff has not alleged facts to suggest he has a plausible Eighth Amendment claim for relief that meets the basic pleading requirements of Federal Civil Procedure Rule 8.

## IV. CONCLUSION

For all of the foregoing reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

**IT IS SO ORDERED**.

Dated: January 2, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[4] 28 U.S.C. § 1915(a)(3) provides, in pertinent part, " An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."